UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUISA GUTIERREZ, an individual, DEBBIE LUNA, an individual, on behalf of themselves and all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON CONSUMER INC., a New Jersey Corporation, BAUSCH HEALTH US, LLC f/k/a VALEANT PHARMACEUTICALS NORTH AMERICA LLC, a New Jersey Limited Liability Company, <br><br> Defendants. | Case No.:  19-CV-1345 TWR (AGS) <br><br> **ORDER GRANTING (1) DEFENDANT JOHNSON & JOHNSON CONSUMER, INC.'S MOTION TO DISMISS AND (2) DEFENDANT BAUSCH HEALTH US, LLC's MOTION TO DISMISS** <br><br> (ECF Nos. 51, 53) |

Before the Court are Motions to Dismiss the Plaintiffs' Fifth Amended Complaint filed by Defendants Johnson & Johnson Consumer Inc. ("JJCI") and Bausch Health US, LLC ("Bausch"), respectively.  (ECF Nos. 51, 53.)  This case comes before the Court after Judge Sabraw dismissed Plaintiffs' Third Amended Complaint ("TAC").  (ECF No. 41.)  The matters have been fully briefed, and for the reasons set forth below, the Court **GRANTS** both Defendants' motions to dismiss **WITH PREJUDICE**.

# I. BACKGROUND

## A. Factual Background

Plaintiffs bring this putative class action against Defendants JJCI and Bausch for allegedly falsely and deceptively advertising the "Baby Powder" and "Shower to Shower" ("STS") products, respectively.  Referred to in the FiAC as the "Talcum Products," the Baby Powder and STS products are used to "treat diaper rash, prevent odor, and 'provide a fresh feeling.'" (FiAC ¶ 2.)  The STS product is a deodorant and antiperspirant.  (*Id.* ¶ 60.)

Plaintiffs allege that Defendants made misleading representations in advertising and marketing the Talcum Products.  Plaintiffs state that these misleading representations led them to believe that the Talcum Products were safe and pure, when they actually contained hazardous substances such as "asbestos, asbestiform fibers, lead, asilica, and arsenic."  (*Id.* ¶¶ 10, 79, 82–84, 91–93, 98, 100, 102, 110.)  Defendants allegedly described and advertised the Talcum Products using the following statements and phrases:

- "#1 Choice for Hospitals"
- "#1 Choice for Adults"
- "Pure"
- "Most Pure"
- "For the Most Delicate Days of Life"
- "Choose Gentle"  (*Id.* ¶¶ 2, 34, 44, 84, 87, 90, 91, 94.)

Defendants also made the following statements on the labels of the Baby Powder bottles:

- "For over 125 years Johnson's formulas have been specially designed for baby's unique and delicate skin."
- "Great for kids and adults too!"
- "Hypoallergenic & tested with dermatologists"
- "We love babies.  Johnson's Baby Powder leaves skin feeling delicately soft and dry while providing soothing relief  (*Id.* ¶¶ 77, 97.)

2

For STS, Plaintiffs allege that Defendants made the following representations:

- "For nearly 50 years SHOWER TO SHOWER® Absorbent Body Powders have delivered long-lasting freshness.  (*Id.* ¶ 101.)
- "Stay Fresh"  (*Id.* ¶ 104.)
- "Power of Powder"  (*Id.* ¶101.)
- "A sprinkle today, keeps the shower away"  (*Id.* ¶ 60, 103.)

Plaintiffs argue that all of these statements are misleading because they suggest to consumers that the Talcum Products are "safe and pure," when they are not.  (*Id.* ¶¶ 10, 93–94, 96.)  According to Plaintiffs, these products contain contaminants that can cause cellular inflammation and oxidative stress.  (*Id.* ¶¶ 7–8, 10, 91, 110.)  They also allegedly pose inhalation risks.  (*See id.*  ¶¶ 91, 93, 110.)

These alleged misrepresentations—in addition to Defendants' marketing campaign that has been going on "for decades"—led Plaintiffs to purchase the Talcum Products, assuming that they were safe and pure.  (*See id.* ¶¶ 1, 9, 113–14, 159–160.)   Plaintiffs stopped buying the Talcum Products after reading a Reuters article published in December 2018 (*Id.*, Ex. C) that revealed that the Talcum Products often contained "hazardous substances" such as asbestos, lead, silica, arsenic, and/or asbestiform fibers.  (*Id.*  ¶¶ 16–17.)

### B. Procedural Background

On May 20, 2019, Plaintiffs filed this putative class action against JJCI in state court.  (*See* ECF No. 1.)  After JJCI removed the case to federal court (*see id.*), Plaintiffs amended their complaint to name Bausch as the correct manufacturer of STS.  Plaintiffs then amended their complaints two more times before having their Third Amended Complaint ("TAC") dismissed.  (*See* ECF No. 41.)  In the TAC filed on November 4, 2019, Plaintiffs alleged that JJCI and Bausch violated the Consumer Legal Remedies Act ("CLRA"), Civil Code 1750, *et seq.*, the False Advertising Law ("FAL"), Business & Professions Code 17500, *et seq.*, and the Unfair Competition Law ("UCL"), Business & Professions Code 17200, *et seq.*  (ECF No. 21.)  Plaintiffs argued that Defendants JJCI

and Bausch failed to warn about contaminants in their products and misled consumers by representing that their products were safe when they were not and contained asbestos, asbestiform fibers, lead, silica, and arsenic.  (TAC ¶¶ 3, 5, 54, 75–92.)  JJCI and Bausch respectively filed motions to dismiss.  (ECF Nos. 28, 31.)

On April 27, 2020, the court granted Defendants' motions to dismiss.  (ECF No. 41.)  In doing so, the court made two separate and key findings.  First, the court dismissed Plaintiffs' claim that Defendants misled consumers by failing to disclose the existence of contaminants in their products.  (*Id.* at 12, 19.)  The court found that California Proposition 65 governed any duty to disclose the existence of these contaminants, and since Plaintiffs did not comply with the pre-filing notice requirement under Proposition 65, they could not base their claims on Defendants' failure to disclose.  (*Id.* at 12.)

Second, the court dismissed Plaintiffs' claims under the UCL, FAL, and CLRA for failing to meet Rule 9(b)'s heightened pleading standard.  (*See id.* at 19.)  The court noted that Plaintiffs fail to state that they actually viewed or relied on JJCI's and Bausch's alleged misrepresentations, and that Plaintiffs had "lumped" JJCI and Bausch together in a way that runs contrary to Rule 9(b).  (*See id.* at 14–16.)  In particular, the court noted that Plaintiffs failed to differentiate between JJCI and Bausch, instead referring to them collectively as "Defendants" and not identifying which Defendant did what.  (*Id.* at 15–16.)

In a similar vein, the court also rejected Plaintiffs' claim that they did not have to plead specific reliance under the California Supreme Court's decision in *In re Tobacco II,* 207 P.3d 20 (2009).  (*Id.* at 14–16.)  Plaintiffs argued that because Defendants had engaged in an extensive marketing campaign touting the safety of the Talcum Products, *In re Tobacco II* applied and Plaintiffs did not have to identify the specific misrepresentation that they relied on in making their purchase.  (*Id.* at 14.)  The court disagreed.  The court found that *In re Tobacco II* did not apply because Plaintiffs had failed to allege exposure to the advertisement campaign.  (*Id.*)  In particular, given that

the advertisements alleged in the TAC circulated between the 1970s and 1990s, or from a "world completely detached from Plaintiff's," the court stated that Plaintiffs must specifically allege *how* Defendants' alleged misrepresentations affected their decision to buy the Talcum Products.  (*Id.*)  The court granted Defendants' motions to dismiss without prejudice, stating that Plaintiffs must assert their claims under the UCL, FAL, and CLRA without relying on a duty to disclose, which Proposition 65 foreclosed.  (*Id.* at 19.)

Since then, Plaintiffs have filed a Fourth and Fifth Amended Complaint.  (ECF Nos. 42, 50.)  The Fourth Amended Complaint had a short life, however, as less than one month after its filing, Plaintiffs filed a Motion for Leave to Amend.  (ECF No. 45.). The court granted Plaintiffs' request—but not without stating that Defendants had made "reasoned arguments about the futility of Plaintiffs' amended claims."  (ECF No. 49 at 7.)  Four days after the court granted their motion, Plaintiffs filed the currently operative FiAC.  The FiAC asserts the same causes of action under the UCL, FAL, and CLRA and similarly alleges that Defendants engaged in deceptive business practices by making misleading representations about the safety and purity of the Talcum Products.  Plaintiffs include the following new information to bolster their claims: (1) that studies from a multi-district litigation in the District of New Jersey found that 69 percent of Talcum Products dating back from the past 50 years contained asbestos, and that Talcum Products can cause cellular inflammation and oxidative stress; (2) Defendants deceived Plaintiffs and the public by representing that their products were "pure," "the most pure," and "asbestos-free," when they were not; and (3) Defendants deceived the public by stating that their products were great for use on babies and children when the American Association of Pediatrics has stated clearly since 1981 that they pose inhalation risks to infants and children.  (*See generally* FiAC.)  Plaintiffs also highlight the following misrepresentations in the FiAC: "#1 Choice for Hospitals," "#1 Choice for Parents," "pure," "most pure," "for the most delicate days of life," and "choose gentle."  (*Id.*) Lastly, Plaintiffs allege that Defendants' use of planograms and the placement of their

Talcum Products in retail store aisles give a false impression that the Talcum Products are safe and pure, when they are not.  (FiAC ¶¶ 89, 141.)

JJCI and Bausch filed motions to dismiss, respectively.  (ECF Nos. 51, 53.)  Both Defendants argue that Plaintiffs' FiAC does not cure the deficiencies highlighted in the previous Order, namely that (1) Plaintiffs have not shown that the alleged misrepresentations are in fact misleading and that (2) they have not satisfied Rule 9(b).  Furthermore, both JJCI and Bausch state that given this is Plaintiffs' *sixth* attempt to file a claim, this Court should now dismiss with prejudice.  For the reasons below, the Court **GRANTS** the Defendants' request and **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.

## II.    LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief", backed by sufficient facts that make the claim "plausible on its face."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 566 U.S. at 678.  Rather, it demands enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  This presumption does not extend to conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

/ / /

/ / /

6

**B. Federal Rule of Civil Procedure 9(b)**

For claims based in fraud, Rule 9(b) applies and imposes a heightened pleading standard. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b), the plaintiff must state with "particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). This means that the plaintiff must state the "who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also state "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citations omitted). In cases involving more than one defendant, Rule 9(b) does not allow the plaintiff to "lump [the] multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Rather, the plaintiff must "differentiate their allegations" and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* This ensures that each defendant has notice of their particular misconduct so that they can "defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citation omitted).

**C. UCL, FAL, and CLRA and the Reasonable Consumer Test**

Courts often analyze claims under the UCL, FAL, and CLRA together "because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014). California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. Any FAL violation amounts to a UCL violation. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (2002)). California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Claims under all three of these statutes are subject to the "reasonable consumer test." *Williams*,

552 F.3d at 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  The reasonable consumer test requires a probability that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted).  Courts have dismissed cases under the reasonable consumer test only in select circumstances, particularly where the "alleged violations of the UCL, FAL, and CLRA are simply not plausible."  *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

## III.   ANALYSIS

Both JJCI and Bausch argue that this Court should dismiss the FiAC for (1) failing to show that the alleged misrepresentations are misleading and (2) failing to plead particularities and reliance under Rule 9(b).  The Court must first analyze whether Plaintiffs meet Rule 9(b)'s pleading standard.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1079 (S.D. Cal. 2019) (stating that the court must first ensure whether "Plaintiff meets the Rule 9(b) threshold before assessing whether Plaintiff alleges sufficient facts to demonstrate a reasonable consumer would be deceived by the advertisements.").

### A. Defendant JJCI

Since Plaintiffs allege that JJCI made misleading representations about the Talcum Products, they effectively base their UCL, FAL, and CLRA claims in fraud.  Thus, Rule 9(b) applies.[1]  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Here, Plaintiffs fall short of meeting Rule 9(b)'s standard for two reasons: (1) they do not plead "what" they actually viewed and read; and (2) they do not adequately plead reliance.

---

[1] In their Oppositions (ECF Nos. 56, 57), Plaintiffs argue that Rule 9(b) does not apply to their claims. Plaintiffs base this argument on *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020).  But this argument is unconvincing.  As Defendants point out, the portion of the opinion that Plaintiffs rely on is dicta.  (*See* ECF No. 58 at 7.)  Further, *Moore* only contemplates a *possibility* that Rule 9(b) may not apply to certain claims under the UCL, FAL, and CLRA.  *See Moore*, 966 F.3d at 1018, n. 11.  Here, Plaintiffs have not shown that this possibility applies.

### 1.  Plaintiffs Do Not Satisfy Rule 9(b)'s Heightened Pleading Standard

"In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials." *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013).  Further, the plaintiff must allege what the "advertisements or other sales material specifically stated." *Kearns,* 567 F.3d at 1126 (9th Cir. 2009).

Throughout the FiAC, Plaintiffs fall short of this standard.  Apart from a few exceptions, Plaintiffs do not allege the specific content of the advertisement they viewed. (*See* FiAC ¶¶ 93, 95, 96.)  Instead, they only provide their own interpretation of the advertisements.  For example, Plaintiffs state that they "viewed and relied upon the statements and advertisements made by Johnson & Johnson that the Talcum Products were pure." (*Id.* ¶ 93.)  Further, Plaintiffs also state that they "viewed and saw the various advertisements by Johnson & Johnson touting the safety of the Talcum Products."  (*Id.* ¶ 95.)  Neither of these claims—and others like it in the FiAC (*see id.* ¶¶ 94, 96, 109, 113–114)—identify *which specific advertisement* Plaintiffs relied on or *what the advertisement explicitly said*.  Merely alleging that the advertisements stated that the Talcum Products were "pure," "safe," (*id.* ¶¶ 93, 95) or that they would keep you "fresh" and "odor free" (*id.* ¶¶ 113–114) without identifying the particular advertisement that Plaintiffs viewed does not satisfy Rule 9(b).  *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) (finding that the plaintiff does not satisfy Rule 9(b) because she fails to identify which specific advertisements that she "actually saw and relied upon" in making her purchase).

The same applies to Plaintiffs' claims that JJCI marketed the Talcum Products as the "#1 Choice for Hospitals" and "#1 Choice for Adults." (*See, e.g.*, FiAC ¶ 87.)  The FiAC contains only one advertisement that made these statements.  (*See id.*, Ex. I.)  But as JJCI notes, this advertisement does not concern the Talcum Products at all.  Thus, with respect to the Talcum Products specifically, Plaintiffs do not identify which advertisement they viewed that contained the slogans "#1 Choice for Hospitals" and "#1

///

Choice for Adults."  For this reason, Plaintiffs' claim falls short of satisfying Rule 9(b)'s standard.

### 2.  Reliance

To the extent Plaintiffs identify specific misrepresentations and advertisements that JJCI made, they must also allege that they viewed, read, and relied on them.  "Plaintiffs alleging claims under the FAL and UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue."  *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (*citing Kwikset Corp. v. Superior Court*, 246 P.3d 877 (2011)).  Plaintiffs must also plead actual reliance for fraud-based claims under the CLRA.  *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010).

Plaintiffs list several specific statements that JJCI made in the relevant time period. In particular, Plaintiffs list the following statements placed on the labels of JJCI's Baby Powder bottles:

- "For over 125 years Johnson's formulas have been specially designed for baby's unique and delicate skin."
- "Great for kids and adults too!"
- "Hypoallergenic & tested with dermatologists"
- "We love babies.  Johnson's Baby Powder leaves skin feeling delicately soft and dry while providing soothing relief (FiAC ¶ 97.)

Plaintiffs also allege that JJCI represented the Talcum Products as "pure," "most pure," (*id.* ¶¶ 84, 94, Ex. T) and used phrases in their marketing such as "choose gentle," and "for the most delicate days of life."[2] (*Id.* ¶ 90.)

---

[2] Plaintiffs state that JJCI represented its Talcum Products as the "#1 Choice for Hospitals" and the "#1 Choice for Parents."  But Plaintiffs do not identify which particular advertisement they viewed that makes this claim.  Apart from citing an advertisement that does not concern the Talcum Products at all (*see* FiAC ¶ 87, Ex. I), Plaintiffs do not point to any other advertisement where JJCI used these slogans in marketing the Talcum Products.

Here, although Plaintiffs specifically identify the alleged misrepresentation by JJCI, Plaintiffs do not allege that they relied on these misrepresentations. (*See id.* ¶¶ 84, 90, 97.)  The same applies to Plaintiffs' claims that JJCI made misleading statements about the Talcum Products on webpages and social media. (*Id.* ¶¶ 91–92, 109.)  Plaintiffs fail to allege that they viewed or relied on these statements at all.  *See Beecher v. Google N. Am. Inc.*, No. 18-CV-00753-BLF, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) (holding that the plaintiff falls short of meeting Rule 9(b)'s standards because he fails to allege that he "viewed Google's alleged misrepresentations, much less that he relied on those misstatements.").

To the extent Plaintiffs allege reliance, their claims fall short of Rule 9(b) for the same reason noted above: they fail to identify *which particular advertisement* they relied on.  For example, Plaintiffs state that they relied on JJCI's representations that the Baby Powder was "pure," "the most pure," and the #1 Choice for Hospitals." (FiAC ¶¶ 10, 94–95) without specifying *which* advertisement actually induced their reliance.  The same applies to the series of advertisements and representations that Plaintiffs provide. (*See* FiAC, Ex. L–X.)  Merely supplying a list of advertisements and the misleading statements that JJCI made does not show which specific advertisement or statement that Plaintiffs actually saw.  Thus, these claims fall short of the specificity required by Rule 9(b).

In their Opposition, Plaintiffs argue that they have satisfied the reliance requirement because they alleged that they were "convinced that the Talcum Products were safe for use *based on the affirmative statements made on the bottles of the Baby Powder*." (FiAC ¶ 113) (emphasis added).  But this does not save their claims.  Here, to the extent that this statement suggests reliance, Plaintiffs do not identify *which* affirmative misrepresentation on the Baby Powder bottle they relied on.  *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *8 (N.D. Cal. June 30, 2020) (stating that, although Plaintiff list a "*range* of representative advertisements that she alleges to be misleading," she provides "no indication of *which statements*, if any,

Plaintiff *herself* relied upon before purchasing the unspecified Products.") (emphasis added); *see also In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (stating that plaintiff does not satisfy Rule 9(b) when the plaintiff "generally identifies allegedly misleading statements but fails to specify *which* statements the plaintiff actually saw and relied upon.") (emphasis added). Further, all of these representations concern whether the Talcum Products are safe to use. And as Defendants argue, Plaintiffs have not carried their burden of showing that the Talcum Products are unsafe. First, Plaintiffs have not shown that the Talcum Products contain unsafe *levels* of contaminants, as Judge Sabraw noted in his order. Second, in terms of inhalation risks, JJCI posted clear warning labels on their products, which as a qualifier, can "ameliorate any tendency . . . to mislead."[3] *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). And third, as JJCI argues, Plaintiffs have not adequately shown how cellular inflammation and oxidative stress are harmful. (*See* ECF No. 58 at 2, 6.) Thus, Plaintiffs fall short of Rule 9(b) on two fronts: they fail to allege the particularities that Rule 9(b) requires, and they fail to show how these representations are false or misleading.

Plaintiffs also state that they viewed and relied on television advertisements that ran during the Class Period. (FiAC ¶ 96.) Here, Plaintiffs identify the specific advertisements at issue and allege that they relied on them. Nonetheless, Plaintiffs fall short—not under Rule 9(b), but rather under the reasonable consumer test. As JJCI notes, two of the advertisements that Plaintiffs specify— "Your Whole Life" and "Gentle is Everything"—do not state anything about Talcum Products. The third advertisement was aired by a third party—not by JJCI. Thus, even if Plaintiffs allege that they relied on these specific advertisements, their reliance was unreasonable. To be sure, although courts typically defer ruling on the reasonable consumer test at the motion to dismiss

---

[3] All of the cases that Plaintiffs cite are distinguishable because they concern warning labels either written in fine print or placed inconspicuously on the product where consumers would not likely check. (*See* ECF No. 56 at 9.)

19-CV-1345 TWR (AGS)

stage, they *have* dismissed cases when it seems plain that no reasonable consumer would view the advertisement and be misled in the manner that plaintiffs allege.  For example, in *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010), the court held that no reasonable consumer would be misled into believing that the cereal, "Cap'n Crunch," derives any nutritional value from berries.  The court noted that there were "no representations that the Crunch Berries [were] derived from real fruit nor [were] there any depictions of any fruit on the cereal box."  *Id.*  Similarly, the television advertisements that Plaintiffs identify here make no representations about the Talcum Products at all.  Indeed, they do not even feature the Talcum Products.  Thus, Plaintiffs' claim that they relied on these two television advertisements to make inferences about the Talcum Products does not pass the reasonable consumer test.

### 3. *In re Tobacco II* Exception Does Not Apply

Plaintiffs try to overcome these shortcomings by alleging that the *In re Tobacco II* exception applies.  It does not.  In *In re Tobacco II,* the plaintiffs alleged that cigarette manufacturers had conducted a "decades-long campaign of deceptive advertising and misleading statements about the addictive nature of nicotine and the relationship between tobacco use and disease."  207 P.3d 20, 25 (2009).  The California Supreme Court held that when a plaintiff alleges "exposure to a long-term advertising campaign," the plaintiff does not have to plead with an "unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."  *Id.* at 40.  In this way, the *In re Tobacco II* exception is narrow.  *See Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013); *see also Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013).  Plaintiffs can assert the *In re Tobacco II* exception only when "the plaintiff has been exposed to numerous advertisements over a period of decades."  *Kane*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013).  Plaintiffs who have never been exposed to an alleged misleading advertising campaign cannot rely on the *In re Tobacco II* exception.  *Id.* (citing *Pfizer Inc. v. Superior Court*, 105 Cal. Rptr. 3d 795, 803 (2010)).  And although Plaintiffs do

not have to allege a specific advertisement that they relied on, they must still allege that they viewed and relied on the marketing campaign. *See In re Tobacco II Cases*, 207 P.3d at 40–41 (2009).

Plaintiffs' claims do not fall within this narrow exception. First, Plaintiffs fail to establish a "long-term marketing campaign" during the relevant class period. Plaintiffs allege a combination of advertisements that either (1) predate their purchase by *years*, (2) have nothing to do with the Talcum Products, or (3) were published or aired during the relevant period but which Plaintiffs never viewed. In particular, many advertisements alleged in the FiAC ran between the 1970s and 1990s. (*See* FiAC ¶¶ 81–82, 84.) Others, as JJCI notes, aired in foreign markets. (*Id.* ¶ 83.) This stands in contrast to *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 979 (N.D. Cal. 2015), where the court found that plaintiffs had adequately alleged a pervasive and extensive advertising campaign in part because they had (1) provided in their complaint examples of the extensive marketing campaign during the relevant period that spanned eighteen pages and (2) attached advertisements that were representative of the marketing at issue. Here, Plaintiffs attach (1) certain "press releases … that an average consumer would be unlikely to read," *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2014 WL 2450996, at *2 (N.D. Cal. June 2, 2014), (2) news articles, (3) advertisements that do not concern the Talcum Products, and (4) online webpages and social media posts that Plaintiffs do not allege that they read, viewed, or relied on. (*See generally* FiAC, Ex. H–K, L–X.)

Second, Plaintiffs only state in conclusory terms that they actually "viewed," "relied on" and were "exposed" to the marketing campaign. For example, Plaintiffs state, "[r]elying upon these representations for the past 50 years . . . Plaintiffs and the Class Members purchased the Talcum Products, believing they were safe." (FiAC ¶ 10.) Plaintiffs also state that "[a]fter being exposed to such misrepresentations by Defendants for decades, Plaintiffs . . . continuously purchased the Talcum Products from Defendants." (*Id.* ¶¶ 113, 114.) None of these statements allege enough details to establish that the *In re Tobacco II* exception applies. Although granular details are

unnecessary, courts have held that these types of conclusory statements fall short in establishing the *In re Tobacco II* exception.  *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *37 (N.D. Cal. May 27, 2016) (stating that out of the 300 pages in the Second Amended Complaint, plaintiffs do not satisfy *In re Tobacco II* because they only allege a single, conclusory sentence that refers to reliance: "In reliance upon [Defendants' negligent] misrepresentations, Plaintiffs … purchased insurance or health benefits services from Defendants."); *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 978 (N.D. Cal. 2015) (noting that the "single and bare allegation that [p]laintiffs viewed Apple's website, saw in-store advertisements, and/or [were] aware of Apple's representations regarding the safety and security of the iDevices prior to purchasing their own iDevices" does not establish the *In re Tobacco II* exception) (internal quotation marks omitted).

Plaintiffs respond unconvincingly.  In their Opposition, Plaintiffs state that they sufficiently show that *In re Tobacco II* applies because they provide "specific examples of Defendants' marketing both within the four-year class period, and prior to the Class Period."  (ECF No. 56 at 18.)  But the paragraphs that Plaintiffs cite do not specify *when* or *how* Plaintiffs were exposed to these advertisements.  (*See generally* FiAC ¶¶ 77–114.) Merely stating in conclusory fashion that they were exposed to Defendants' marketing campaign "for decades" or that Plaintiffs "viewed and read" Defendants' misrepresentations is not enough.  *See Opperman v. Path,* 84 F. Supp. 3d 962, 982 (N.D. Cal. 2015) (stating that the plaintiffs' failure to "allege specific dates, or even timeframes, during which they were exposed to the [marketing] campaign" weighed against finding that the plaintiffs' claims were "sufficient under *Tobacco II*.").

### 4. Plaintiffs' Argument that JJCI Can Be Liable for the Mere Sale of the Talcum Products is Foreclosed

Lastly, Plaintiffs state that the mere sale of the Talcum Products by JJCI constitutes a deceptive act.  (FiAC ¶ 112.)  In other words, independent of any fraudulent misrepresentation in its advertising, selling the Talcum Products in retail stores *alone*

constitutes the deceptive act that misled consumers into thinking that the products were safe, when they were not.

Plaintiffs lack adequate support in making this claim, and the cases they rely on do not help.  As Plaintiffs themselves explain, the defendants in each of the cases they cite were allegedly liable because they *failed to disclose material information* about their products.  *That* is what made the mere act of selling their product a deceptive act.  For example, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225–126 (9th Cir. 2015) concerned Ford's failure to disclose an alleged defect in their Ford Focus vehicles.  In *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 592–93, 596 (2011), the plaintiffs sued—and the court found liability—based on a fraudulent concealment theory.  And contrary to Plaintiffs' argument, *Mirkin v. Wasserman*, 858 P.2d 568 (1993) does not support the claim that courts "routinely" hold that the mere sale of a product constitutes a deceptive act.  (ECF No. 56 at 10.)  Rather, the court expressly rejected that argument in the context of stock markets.  *See id.* at 584.  All of the other cases that Plaintiffs cite do not support their claims at all.  *See Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329 (2010); *All. Mortg. Co. v. Rothwell*, 900 P.2d 601 (1995); *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903 (1997).

As Judge Sabraw held, Plaintiffs may not base their UCL, FAL, and CLRA claims on Defendants' failure to disclose.  (ECF No. 41 at 12.)  Proposition 65 foreclosed that argument.  (*Id.*)  Thus, Plaintiffs may not rely on the cases cited above to argue that the mere sale of the Talcum Products by JJCI constitutes a deceptive act that gives rise to liability.  The Court also finds unconvincing Plaintiffs' claim that JJCI's placement of its Baby Powder next to other JJCI baby products or in the baby product aisles at retail stores was deceptive.  Plaintiffs argue that JJCI's product placement gave the impression that its Baby Powder were safe and pure, or appropriate for use on babies, when they were not.  (FiAC ¶ 89).  But here, and as noted above, Plaintiffs have not first shown that JJCI's Baby Powder are in fact *unsafe*, as instructed by Judge Sabraw and required under Rule 9(b).  This is critical.  Without sufficiently showing that the product is unsafe,

Plaintiffs cannot establish anything deceptive or misleading about JJCI's product placement.  Further, with respect to Plaintiffs' claim that JJCI placed its Baby Powder next to other JJCI baby products to give the impression that it was "safe" and "pure," Plaintiffs fail to rule out other reasons that JJCI might have had for this product arrangement.  For example, JJCI might have wanted to place its baby products together—including its Baby Powder—to distinguish them from other manufacturers' products.  *See Cheslow v. Ghiradelli Chocolate Co.*, No. 19-cv-7467-PJH (N.D. Cal. April 08, 2020) (noting that the "ultimate impact" of the allegedly deceptive product placement is unclear because the products could have been organized and placed together for being "made by the same manufacturer" and thus "grouped together to distinguish from products made by other manufacturers"—not for some allegedly deceptive purpose).  Here, without more facts, Plaintiffs have not adequately shown that their interpretation of JJCI's product placement meets the plausibility standard to survive a motion to dismiss.

As evident from the discussion above, Plaintiffs fail to satisfy Rule 9(b)'s pleading standard.  In particular, they (1) fail to allege the specific misrepresentation that they viewed and relied on, and (2) they fail to establish that JJCI engaged in an extensive, long-term marketing campaign.  The Court therefore **GRANTS** JJCI's motion to dismiss.

### A. Defendant Bausch

Plaintiffs' claims against Bausch also fall short of Rule 9(b).  In particular, Plaintiffs continue to lump JJCI and Bausch together without identifying the specific statements that Bausch made during the class period—and critically, after Bausch purchased the STS product line.  Also, Plaintiffs do not adequately plead the particularities that Rule 9(b) requires.  For these reasons, the Court **GRANTS** Bausch's motion to dismiss.[4]

---

[4] Plaintiffs also argue that the mere sale of the STS product by Bausch constitutes a deceptive act.  (ECF No. 57 at 9–10.)  This theory is not viable for the same reason that it fell short against JJCI.  Further, because Bausch never placed its STS product in retail stores' baby product aisles, Plaintiffs' claim against Bausch on this ground is unavailing.

### 1. Lumping

As noted above, Rule 9(b) does not allow the lumping of multiple defendants.  *See Destfino v. Reisewig*, 650 F.3d 952, 958 (9th Cir. 2011).  Since Rule 9(b) aims to give fair notice to each defendant of their misconduct, lumping makes it unclear which Defendant committed the misconduct at issue.

Here, and similar to the TAC, Plaintiffs continue to lump JJCI and Bausch together.  Plaintiffs allege that "*Defendants*" represent that their products are "pure," "most pure," "asbestos-free" without identifying which Defendant—JJCI or Bausch— made the statement.  (FiAC ¶¶ 5 114, 135.)  Indeed, some of the alleged statements like "pure," "most pure," and "asbestos-free," trace back to JJCI only.  Other statements about STS *predate* Bausch's acquisition of the product line.  (*See id.* ¶ 60.)  Thus, those statements cannot be attributed to Bausch because Bausch did not own STS at the time of the alleged misrepresentation.

Plaintiffs try to overcome this "lumping" deficiency in two ways.  First, Plaintiffs argue that because JJCI's and Bausch's products are substantially similar, reasonable consumers who view JJCI's advertisements would reasonably believe that the same representations hold true for Bausch's STS products.  (FiAC ¶ 106.)  This theory does not comport with Rule 9(b).  As noted above, Rule 9(b) requires that Plaintiffs identify the specific fraudulent act that *each* defendant committed.  Here, Bausch had nothing to do with JJCI's advertisements.  The mere similarities between the Talcum Products does not mean that Plaintiffs may impute the statements that JJCI made to Bausch.  Second, to the extent that Plaintiffs argue Bausch *ratified* JJCI's advertisements (*id.* at ¶ 103), Plaintiffs fail to make the requisite showing.  Ratification requires a "ratifiable act," which means that the actor must have "acted or purported to act as an agent on the person's behalf." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (citing Restatement (Third) of Agency § 4.03).  The doctrine of ratification does not apply when the actor is "not an agent and does not purport to be one."  *Id.* (internal citations omitted). Here, Plaintiffs do not even attempt to show that JJCI and Bausch shared an agency

relationship.  Thus, Plaintiffs fail to establish that Bausch ratified JJCI's statements.  *See France Telecom S.A. v. Marvell Semiconductor Inc.*, 82 F. Supp. 3d 987, 995 (N.D. Cal. 2015) (stating that plaintiffs had not established agency or ratification because they failed to present any evidence that the alleged agent acted on the alleged principal's behalf or agreed to be subject to the alleged principal's control).

### 2. Rule 9(b) and Reliance

When stripped of its lumping, Plaintiffs can attribute only the following statements to Bausch: (1) that the STS products have been sold for "nearly 50 years"; and that (2) Bausch marketed STS using the slogan, "stay fresh."  (FiAC ¶¶ 101, 114.)  Here, Plaintiffs fail to provide any of the details that Rule 9(b) requires.  In particular, they do not allege *when* and *where* they viewed the advertisement that stated "stay fresh" or that STS has been sold for "nearly 50 years."  (*See id.*)  Furthermore, Plaintiffs fail to allege *which particular advertisement* they viewed or read that led them to believe that the STS product was safe.  (*See id.* ¶ 114.)  Merely stating that Plaintiffs were "convinced" by "BHUS's marketing" that STS had been sold for "nearly 50 years" without identifying the specific advertisement that they saw is not enough to satisfy Rule 9(b)'s demands.  *See Herrera v. Estee Lauder Companies, Inc.*, 2012 WL 12507876, at *4 (C.D. Cal. Sept. 20, 2012) (finding that the plaintiffs' claims do not satisfy Rule 9(b) requirements because they "point to no particular advertisements or promotional materials that they were personally exposed to."); *see also Thornton v. Micro-Star Int'l Co.*, No. 217CV03231CASAFMX, 2017 WL 10621210, at *7 (C.D. Cal. Aug. 21, 2017) (finding that plaintiffs' claim(s) fall short of Rule 9(b) in part because they do not identify which advertisements or promotional materials that they read).  Moreover, Plaintiffs do not allege in the FiAC that they relied on the alleged misrepresentations made by Bausch.  Any explicit mention of reliance in Plaintiffs' pleadings traces back to statements made by JJCI, not Bausch.  (*See* FiAC ¶¶ 93–95.)

/ / /

/ / /

### 3. *In re Tobacco II* Exception Does Not Apply

Here again, Plaintiffs try to overcome their shortcomings by alleging that *In re Tobacco II* applies. And here again, it does not. Plaintiffs fail to show that Bausch engaged in a long-term marketing campaign. Plaintiffs lump JJCI and Bausch together in the FiAC by alleging that "Defendants" engaged in a long-term marketing campaign. (*See* FiAC ¶¶ 108–09.) But Plaintiffs fail to state which part of the long-term marketing campaign traces back to Bausch. And further, Plaintiffs' claims in the FiAC are factually impossible. In particular, Plaintiffs allege that Defendants had engaged in a deceptive marketing campaign "for decades." (*Id.* ¶ 113.) But Bausch had only acquired the STS product line in 2012. (*See id.* ¶ 12.) Thus, as currently pled, Plaintiffs have not made the requisite showing that Bausch engaged in a long-term marketing campaign to establish that the *In re Tobacco II* exception applies.

Put simply, Plaintiffs cannot put words in Bausch's mouth. When stripped of its lumping, Plaintiffs cannot show that Bausch engaged in a long-term marketing campaign. In addition, Plaintiffs cannot satisfy Rule 9(b) by alleging *when* and *where* they saw the alleged misrepresentations at issue. As a result, the Court **GRANTS** Bausch's motion to dismiss.[5]

### B. Leave to Amend

Federal Rule of Civil Procedure 15(a) states that "the court should freely give leave [to amend] when justice so requires." In making this decision, the district court must consider Rule 15's purpose, which is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.

---

[5] Since Plaintiffs fail to satisfy Rule 9(b)'s pleading standard, the Court does not have to engage in the reasonable consumer test. Indeed, without knowing which advertisement Plaintiffs relied on, the Court has no alleged misrepresentation to analyze under the reasonable consumer test. *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) (stating that the "[p]laintiff must plead which specific advertisements she saw, believed, and relied upon in order for the Court to assess how a reasonable consumer would view the different advertisements.") (internal quotation marks omitted).

1   1981).  But the court may still deny leave for various reasons, including the "repeated

2   failure to cure deficiencies by amendments previously allowed" or "futility of

3   amendment."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.

4   2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "The district court's

5   discretion to deny leave to amend is particularly broad where a plaintiff previously has

6   amended the complaint."  *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676,

7   690 (9th Cir. 2010).

8        Here, the Court **DENIES** leave to amend.  Granting leave to amend would allow

9   Plaintiffs to file a *sixth* amended complaint in order to address the same shortcomings

10  that have persisted in their pleadings—namely, their failure to satisfy Rule 9(b).  Given

11  how little Plaintiffs have changed the FiAC from the TAC, it seems unlikely that

12  Plaintiffs can rectify the same fundamental deficiencies that have plagued their

13  complaints.  Plaintiffs have failed to identify which specific advertisements they viewed,

14  read, or relied on.  And to the extent they have, they cite advertisements that are

15  irrelevant and do not concern the Talcum Products.  Plaintiffs have had notice about their

16  failure to plead with particularity since Defendants filed their motions to dismiss the

17  *Second* Amended Complaint.  (*See* ECF Nos. 17, 19.)  They have also received clear

18  guidance from Judge Sabraw when he dismissed the TAC.  And yet, despite having

19  multiple opportunities to address their shortcomings, Plaintiffs continue to be unable to

20  clear the Rule 9(b) hurdle.  Thus, the Court concludes that granting leave to amend would

21  be futile and the Defendants' motions to dismiss are **GRANTED WITH PREJUDICE**.

## CONCLUSION

23       Because Plaintiffs have failed to satisfy the pleading requirements of Rule 9(b), the

24  Court **DISMISSES** Plaintiffs' FiAC.  Further, given Plaintiffs' repeated failure to

25  address the same issues, the Court **GRANTS** Defendants JJCI's and Bausch's motions to

26  / / /

27  / / /

28  / / /

dismiss **WITH PREJUDICE**.  All other grounds on which Defendants sought dismissal are **DENIED AS MOOT**.

      **IT IS SO ORDERED.**

Dated:  January 22, 2021

_____
Honorable Todd W. Robinson
United States District Court

19-CV-1345 TWR (AGS)